# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### January 2016 Term

No. 15-0124

**FILED**
**June 3, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**SUGAR ROCK, INC.; GERALD D. HALL;**
**IAMS GAS COMPANY; IAMS OIL COMPANY;**
**CUTRIGHT GAS COMPANY; AND**
**KEITH OIL COMPANY,**
Defendants Below, Petitioners

**V.**

**D. MICHAEL WASHBURN; LISA A. BUZZARD;**
**CLAIRE ROBINSON; EDWIN L. DEEM;**
**REA WEDEKAMM; MARY WAKEFIELD;**
**KENNETH A. TOWNSEND;**
**ANNA LEE TOWNSEND WELLS;**
**CLYDE TOWNSEND; MICHAEL RUBEL;**
**JEROME RUBEL;**
**KEITH WHITE, EXECUTOR OF**
**THE ESTATE OF BERTIE C. COX; AND**
**J.F. DEEM,**
Plaintiffs Below, Respondents

---

**Appeal from the Circuit Court of Ritchie County**
**Honorable Timothy L. Sweeney, Judge**
**Civil Action No. 11-C-61**

**REVERSED AND REMANDED**

---

Submitted: March 8, 2016
Filed:  June 3, 2016

W. Henry Lawrence
Amy M. Smith
William J. O'Brien
Steptoe & Johnson PLLC
Bridgeport, West Virginia
Attorneys for the Petitioners

James S. Huggins
Daniel P. Corcoran
Thiesen Brock
Marietta, Ohio
Attorneys for the Respondents

**JUSTICE DAVIS delivered the Opinion of the Court.**

1.      "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

2.      An obvious prerequisite to a dissolution of a partnership is its actual existence at the time dissolution is sought.

3.      Before a partnership may be dissolved, it is necessary to first ascertain whether the party seeking dissolution is a partner in such partnership such that he/she may seek its dissolution.

4.      "A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment."  Syllabus point 6, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

5.      "If there is no genuine issue as to any material fact summary judgment

should be granted but such judgment must be denied if there is a genuine issue as to a material fact." Syllabus point 4, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

**Davis, Justice:**

The petitioners herein and defendants below, Sugar Rock, Inc., *et al.* (collectively, "Sugar Rock"),[1] appeal from an order entered January 16, 2015, by the Circuit Court of Ritchie County. By that order, the circuit court granted partial summary judgment to the respondents herein and plaintiffs below, D. Michael Washburn, *et al.* (collectively, "the Minority Partners").[2] More specifically, the circuit court determined that the subject parties' partnerships should be dissolved and appointed a special receiver and a distribution company to achieve this result. On appeal to this Court, Sugar Rock contends that the circuit court erred by granting partial summary judgment because there exist genuine issues of material fact and questions of law regarding the type of partnerships involved in this case, the parties who are the partners thereof, whether the partnerships' property includes leases, and whether the procedural requirements for a decree of dissolution have been satisfied in this case. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we reverse the decision of the Ritchie County Circuit Court. To

---

[1]The additional petitioners herein and defendants below are Gerald D. Hall, President of Sugar Rock, Inc.; Iams Gas Company; Iams Oil Company; Cutright Gas Company; and Keith Oil Company. For ease of reference, the petitioners will be collectively referred to as "Sugar Rock" except where individual designation is needed.

[2]The additional respondents herein and plaintiffs below are Lisa A. Buzzard; Claire Robinson; Edwin L. Deem; Rea Wedekamm; Mary Wakefield; Kenneth A. Townsend; Anna Lee Townsend Wells; Clyde Townsend; Michael Rubel; Jerome Rubel; Keith White, Executor of the Estate of Bertie C. Cox; and J.F. Deem. For ease of reference, the respondents will be referred to collectively as "the Minority Partners" except where the context requires individual designation.

1

summarize, we find that the circuit court erred by granting partial summary judgment because there exist genuine issues of material fact so as to preclude summary disposition of this matter. Accordingly, we reverse the circuit court's award of partial summary judgment and remand this case for further proceedings consistent with this opinion.

# I.

## FACTUAL AND PROCEDURAL HISTORY

The case *sub judice* originated when Clifton G. Valentine ("Mr. Valentine") filed the underlying litigation on November 14, 2011, in the Circuit Court of Ritchie County, West Virginia, against Sugar Rock seeking a dissolution of the subject partnerships,[3] alleging them to be mining partnerships.[4] While Mr. Valentine was the only plaintiff named in his suit,

---

[3]The complaint alleged that Sugar Rock held the following majority interests in the subject partnerships, with the named respondents owning minority interests therein:

> Sugar Rock has a 64.844% interest in the Cutright Gas Company Partnership; a 73.4375% interest in the Iams Oil Company Partnership; a 68.75% interest in the Keith Gas Company Partnership; and a 75.78125% interest in the Iams Gas Company Partnership.

Further, the complaint averred that the partnerships each owned various oil and gas leases and had constructed wells to mine said interests.

[4]For further details regarding Mr. Valentine's companion litigation and his role in the instant proceedings, see *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014).

he specifically referenced many of the respondents herein,[5] attempting to obtain class action status for his litigation against Sugar Rock. Several of these same respondents were added as plaintiffs to the instant proceeding when the First Amended Complaint was filed on December 1, 2011.[6] Additional respondents were added as plaintiffs in the Second Amended Complaint on September 19, 2012.[7] The remaining respondents herein were added as plaintiffs when the Third Amended Complaint was filed on or about December 17, 2014.[8] The Third Amended Complaint also pled in the alternative, averring that the subject partnerships were either mining partnerships or general partnerships.

By order entered July 19, 2013, the circuit court granted the plaintiffs' first motion for partial summary judgment, concluding that the

---

[5]The respondents herein who were listed as putative class members in Mr. Valentine's initial complaint are D. Michael Washburn; Lisa A. Buzzard; Claire Robinson; Edwin L. Deem; Rea Wedekamm; Mary Wakefield; Michael Rubel; Jerome Rubel; and Bertie C. Cox.

[6]Namely, Claire Robinson, Edwin L. Deem, Rea Wedekamm, Mary Wakefield, D. Michael Washburn, and Lisa A. Buzzard joined Mr. Valentine as plaintiffs in the parties' First Amended Complaint. Though not named as plaintiffs in this filing, several additional respondents herein were referenced in the First Amended Complaint as members of the putative "Minority Partner Class."

[7]The Second Amended Complaint removed Mr. Valentine as a plaintiff and added additional plaintiffs, and respondents herein, Kenneth A. Townsend, Anna Lee Townsend Wells, and Clyde Townsend.

[8]By the Third Amended Complaint, Keith White, as the Executor of the Estate of Bertie C. Cox, and J.F. Deem were added as plaintiffs to the instant proceeding.

> Defendants cannot assert the statute of frauds as a defense to Plaintiffs' claims. The mines, leases, or lands of the Partnerships need not be titled in the name of each Plaintiff. Plaintiffs therefore need not produce a deed, will, or other written conveyance in order to prove that they are mining partners.

The circuit court also determined that the subject partnerships were common law mining partnerships, and that the respondents herein are successors to the partnerships' original partners.[9] Thereafter, this Court entertained a certified question in the companion case of *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014), clarifying the nature and requirements of a mining partnership. Specifically, we held in *Valentine* that, "[f]or a person to establish an ownership interest in a mining partnership, the Statute of Frauds requires that the person show their interest was created or conveyed by a deed, will, or similar written conveyance." Syl. pt. 5, 234 W. Va. 526, 766 S.E.2d 785.

The plaintiffs below filed a second motion for partial summary judgment, requesting that certain leases be declared partnership property and seeking a dissolution of the subject partnerships as well as the appointment of a special receiver and a distribution company to accomplish the dissolution. By order entered January 16, 2015, the circuit court determined that the partnerships, whether they be mining partnerships or general

---

[9]It does not appear that Sugar Rock appealed from this partial summary judgment order wherein the circuit court determined the subject partnerships to be mining partnerships.

4

partnerships,[10] were not fulfilling their economic purpose of making a profit on the partnerships' oil and gas wells. Thus, the circuit court opined that, because the losses attributable to these ventures had been continuing for approximately fifteen years, it was not reasonable to expect them to suddenly become profitable or to earn a profit sufficient to recoup the substantial losses they had incurred. Therefore, the circuit court determined that the partnerships should be dissolved and, in doing so, determined that certain leases were property of the partnerships. The circuit court additionally appointed a special receiver and a distribution company to facilitate and oversee the partnerships' dissolution. From this adverse ruling, Sugar Rock appeals to this Court.

---

[10]In this regard, the circuit court acknowledged this Court's prior decision in *Valentine*, 234 W. Va. 526, 766 S.E.2d 785, and found as follows:

> It appears from the facts in the record that most of the Plaintiffs herein ("Documented Plaintiffs") have produced documentation sufficient to satisfy the statute of frauds but that some ("Undocumented Plaintiffs") have not and cannot. Given that the Documented and Undocumented Plaintiffs have asserted claims related to the same Wells and Leases, the precise nature of the Partnerships at issue here, i.e., whether they be mining partnerships or general partnerships in mining, is unclear. For the reasons set forth below, however, this Court concludes that it need not resolve this issue for the purpose of considering Plaintiffs' Second Motion for Summary Judgment.

## II.

## STANDARD OF REVIEW

The case *sub judice* comes before this Court on appeal from the circuit court's order granting partial summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). *Accord* Syl. pt. 5, *Wilkinson v. Searls*, 155 W. Va. 475, 184 S.E.2d 735 (1971) ("A motion for summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law."). Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

We previously have defined the standard of review applicable to a circuit court's award of summary judgment as follows: "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). By equal measure, "[a]ppellate review of a partial summary judgment order is the same as that

6

of a summary judgment order, which is *de novo*." Syl. pt. 1, *West Virginia Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 618 S.E.2d 506 (2005). Guided by this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The pivotal issue in this case is whether the circuit court erred by ordering the dissolution of the parties' partnerships. In rendering its ruling, the circuit court opined that it need not determine the precise nature of the partnerships at issue herein by denominating them as either mining partnerships or general partnerships insofar as all types of partnerships are governed by and subject to the provisions of the Revised Uniform Partnership Act ("RUPA"), W. Va. Code § 47B-1-1 *et seq.* Specifically, the circuit court explained that

> [i]t appears from the facts in the record that most of the Plaintiffs herein ("Documented Plaintiffs") have produced documentation sufficient to satisfy the statute of frauds but that some ("Undocumented Plaintiffs") have not and cannot.[11] Given that the Documented and Undocumented Plaintiffs have asserted claims related to the same Wells and Leases, the precise nature of the Partnerships at issue here, i.e., whether they be mining partnerships or general partnerships in mining, is unclear. For

---

[11]It appears that not all the assignments to the Documented Plaintiffs' predecessors were recorded. It certainly seems plausible that the Undocumented Plaintiffs' predecessors might also have received an assignment over 50 years ago and failed to record it, which would explain their inability to produce documentation today. Although not pled, the Doctrine of Lost Instruments recognizes such a possibility and provides relief therefor under certain circumstances.

7

the reasons set forth below, however, this Court concludes that it need not resolve this issue for the purpose of considering Plaintiffs' Second Motion for Summary Judgment.

(Footnote in original). The circuit court additionally observed that

> [t]he Supreme Court of Appeals held in *Valentine* that "for a person to establish an ownership interest in a mining partnership, the statute of Frauds requires the person to show their interest was created or conveyed by a deed, will, or similar written conveyance." *Id.* at 40. The Supreme Court of Appeals went on, however, explaining that a member of a general partnership that owns and operates oil and gas wells under a mineral lease is <u>not</u> subject to the same requirement. *Id.* at 40-41. . . . Thus, even if certain Plaintiffs herein are unable to show their interest in a mining partnership in accordance with the requirements of the Statute of Frauds, the law does not bar them from requesting relief as members of a general partnership.

(Emphasis in original; footnote omitted). In its arguments to this Court, Sugar Rock contends that the circuit court erred by refusing to determine the precise type of partnerships at issue herein because such a determination is essential to ascertaining the partners thereof, the resolution of which is a necessary prerequisite to ordering their dissolution. By contrast, the Minority Partners assert that the circuit court committed no error.

In our prior opinion in *Valentine*, we considered what types of partnerships are subject to the provisions of the RUPA and ultimately determined that the RUPA governs all types of partnerships. Reiterating the language of the Act, we observed that "[t]he West Virginia Legislature adopted RUPA in 1995, and stated that RUPA 'governs all partnerships' in existence before, on, or after July 1, 1995. *W. Va. Code* § 47B-11-4 [1996]." *Valentine*,

8

234 W. Va. at 540, 766 S.E.2d at 799 (footnote omitted). Hence, the circuit court was correct in its initial observation that the precise nature of the partnership at hand is immaterial given that RUPA provides essential rules that pertain equally to both mining and general partnerships:

> The opinion of the West Virginia Supreme Court of Appeals in *Valentine* states that the Revised Uniform Partnership Act ("RUPA") "governs all partnerships." *Id.* at 43. Thus, while the Supreme Court of Appeals recognized that there are some differences between mining partnerships and general partnerships in mining, those differences do not appear to make any material difference in determining whether or not Plaintiffs are entitled to a dissolution.

We disagree with the circuit court's conclusion, however, that the nature of the subject partnerships need not be determined as a prerequisite to dissolving the same.

The relief ultimately sought by the Minority Partners is the dissolution of the subject partnerships, and this termination of partnership affairs also is governed by RUPA. Specifically, the Minority Partners have sought to dissolve the partnerships through a judicial determination. Pursuant to W. Va. Code § 47B-8-1(5) (1995) (Repl. Vol. 2015),

> [a] partnership is dissolved, and its business must be wound up, only upon the occurrence of any of the following events:
>
> . . . .
>
> (5) On application by a partner, a judicial determination that:

9

(i) The economic purpose of the partnership is likely to be unreasonably frustrated;

(ii) Another partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner; or

(iii) It is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement[.]

However, by the very terms of this statutory language, only a partner may seek judicial dissolution of a partnership.

This condition is problematic given that, without identifying the type of partnerships at issue in this case, we are unable to ascertain the members thereof and, thus, who may seek the partnerships' dissolution. That is, each of the types of partnerships that the circuit court has considered as defining the parties' current business relationship is accompanied by its own unique parameters of partnership status. To be a member of a mining partnership, for example, a partner must produce written documentation of his/her partnership interest. Thus, "[f]or a person to establish an ownership interest in a mining partnership, the Statute of Frauds requires that the person show their interest was created or conveyed by a deed, will, or similar written conveyance." Syl. pt. 5, *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785.

10

Moreover, a member of a general partnership becomes dissociated upon his/her death such that that member no longer has a membership interest in the partnership that can pass to his/her heirs or beneficiaries. In this regard, W. Va. Code § 47B-6-1(7)(i) (1995) (Repl. Vol. 2015) specifically states that "[a] partner is dissociated from a partnership upon the occurrence of any of the following events: . . . . In the case of a partner who is an individual: (i) The partner's death[.]" *Cf.* Syl. pt. 1, *Park v. Adams*, 114 W. Va. 730, 173 S.E. 785 (1934) ("A mining partnership is not terminated by the death of a partner.").[12]

---

[12]This noted distinction between the effect of a partner's death upon a partnership's continued viability, *i.e.*, wherein a partner's death results in the dissolution of a general, or ordinary, partnership but does not produce a similar result in the status of a mining partnership, has been explained as follows:

> One leading distinction between the mining partnership and the general one is that the general one has, as a material element of its membership, *a delectus personæ* (choice of person), while the other has not. Those forming an ordinary partnership select the persons to form it, always from fitness, worthiness of personal confidence; but we know such is not always or often the case in oil ventures. It is because of this *delectus personæ* that the law gives such wide authority of one member to bind another by contracts, by notes, and otherwise. One is the chosen agent of the other. Hence, when one member dies or is bankrupt, or sells his interest to a stranger, even to an associate, the partnership is closed, one chosen member is gone, the union broken, because he may have been the chief dependence for success, and the new comer may be an unacceptable person, who would entail failure upon the firm. In the mining partnership those occurrences make no dissolution, but the others go on; and, in case a stranger has bought the interest of a member, the stranger takes the place of him who sold his interest, and cannot be excluded. If death, insolvency, or sale

(continued...)

11

In this case, the parties have raised genuine issues of material fact that call into question the Minority Partners' status both as members of a mining partnership, because certain of the Minority Partners cannot produce written documentation of their partnership interest, and as members of a general partnership, because many of the Minority Partners claim to have received their partnership interest from a deceased original partner.[13] Furthermore, Sugar Rock suggests that, perhaps, the parties' current business relationship is not really a partnership at all, but, rather, some other type of arrangement such as common interests in mining.

---

[12](...continued)
were to close up vast mining enterprises, in which many persons and large interests participate, it would entail disastrous consequences.

*Childers v. Neely*, 47 W. Va. 70, 73-74, 34 S.E. 828, 829 (1899). *Accord Blackmarr v. Williamson*, 57 W. Va. 249, 253, 50 S.E. 254, 256 (1905) ("[A] mining partnership differs from an ordinary partnership in the fact that no contract between the partners is necessary to create it; that there is no *delectus personarum*, so that the death of a member or the transfer of his interest does not operate as a dissolution, and that there are no rights of survivorship. Because of the absence of these features, mining partnerships have been said not to be true partnerships, but rather a cross between tenancies in common and partnerships proper." (internal quotations and citation omitted)).

[13]Moreover, under RUPA, a partnership also can arise through the parties working together as a joint enterprise such that yet a different type of partnership may be at issue herein. *See* W. Va. Code § 47B-2-2(a) (1995) (Repl. Vol. 2015) (indicating that "the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership"). *See also* W. Va. Code § 47B-2-2(c) (noting that, unless certain enumerated conditions are present, "[a] person who receives a share of the profits of a business is presumed to be a partner in the business").

Yet, it is axiomatic that, in order for partners to seek dissolution of a partnership, they must first be identified as such. And, before a partnership's partners can be identified, the existence of a partnership, itself, must be found in the first instance. It has been recognized, and we expressly hold, that "an obvious prerequisite to a dissolution of a partnership is its actual existence at the time dissolution is sought." *Cross v. O'Heir*, 993 N.E.2d at 1107 (internal quotations and citation omitted). *Accord Morrow v. McCaa Chevrolet Co.*, 231 Ark. 497, 501, 330 S.W.2d 722, 724 (1960); *Schlossberg v. Corrington*, 80 Ill. App. 3d 860, 864, 400 N.E.2d 73, 75 (1980) (same). A necessary corollary to this principle, and an additional holding herein, is that before a partnership may be dissolved, it is necessary to first ascertain whether the party seeking dissolution is a partner in such partnership such that he/she may seek its dissolution. *See, e.g.*, *Soler v. Secondary Holdings, Inc.*, 832 So. 2d 893, 896 (Fla. Dist. Ct. App. 2002) (noting that before alleged partner could request accounting upon dissolution of partnership, he must first establish his partnership status).

Thus, before the subject partnerships may be dissolved, a determination must be made as to (1) the type of partnerships, if any, at issue and (2) the members thereof insofar as partnership status is a prerequisite to seeking a partnership's dissolution. To establish an entitlement to summary judgment, the moving party must demonstrate that he/she is entitled to judgment as a matter of law and that there exists no genuine issue of material fact to

13

preclude judgment in the movant's favor. In other words, "[a] party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. pt. 6, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770. This is so because "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined." Syl. pt. 5, *id.*

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. pt. 5, *Jividen v. Law*, 194 W. Va. 705, 461 S.E.2d 451 (1995). Therefore, "[i]f there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." Syl. pt. 4, *Aetna*, 148 W. Va. 160, 133 S.E.2d 770.

In the case *sub judice*, before a ruling may be made upon the propriety of the circuit court's dissolution order, two critical factual issues must be determined: (1) the type of partnerships, or other business relationship, involved in this case and (2) the partnerships' members entitled to seek its dissolution. It has been noted that "[t]he burden of proving the

14

existence of the partnership rest[s] with [the] plaintiff[s seeking dissolution,] and if [they] failed to satisfy this requirement[, they] would not be entitled to the other relief sought." *Brotherton v. Kissinger*, 550 S.W.2d 904, 907 (Mo. Ct. App. 1977) (internal citation omitted). Here, the Minority Partners have failed to present evidence sufficient to resolve either of these factual disputes. Thus, where there remains to be resolved a crucial factual determination, a genuine issue of material fact exists so as to preclude an award of summary judgment. Syl. pt. 3, *Painter*, 192 W. Va. 189, 451 S.E.2d 755 ("The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial."). Given that the crucial initial issue of the specific type of partnerships at issue herein has not yet been determined, such that the members thereof permitted to request their dissolution also have not been established, there exist genuine issues of material fact so as to render summary disposition of this case improper. Accordingly, we reverse the circuit court's order granting partial summary judgment to the Minority Partners and ordering the dissolution of the subject partnerships and remand this case for further proceedings consistent with this opinion.

## IV.

## CONCLUSION

For the foregoing reasons, the January 15, 2015, order of the Circuit Court of Ritchie County is hereby reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

16